## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

BRUCE RANKIN, On behalf of himself
and those similarly situated,

|                                  |                        |
| Plaintiff,                       | Case Number: _____ |

vs.

DIRECT RECOVERY SERVICES, LLC

CELTIC BANK CORPORATION

Defendants.

---

### COMPLAINT – INCLUDING CLASS ALLEGATIONS with JURY DEMAND

Now comes Plaintiff, Bruce Rankin, and for his Complaint states and avers as follows:

### <u>INTRODUCTION</u>

1.      Plaintiff, Bruce Rankin, brings this class action for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "TCPA"), by the defendant Direct Recovery Services, LLC ("DRS"). Plaintiff also brings an individual claim for DRS's violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA").

2.      The class claim arises from DRS's pattern and practice of placing debt collection telephone calls using an artificial or prerecorded voice without the express consent of the called party or after being told to stop calling, in violation of the TCPA.

3.      In 1991 Congress enacted the TCPA in response to a growing number of consumer complaints regarding unwanted calls.

4.      "Voluminous consumer complaints about abuses of telephone technology--for example, computerized calls dispatched to private homes-- prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. The Act bans certain practices

1

invasive of privacy…" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71, 132 S. Ct. 740, 744 (2012).

5.      "A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.'"  *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 207 L. Ed. 2d 784, 2020 WL 3633780, at *3 (2020) (Kavanaugh, J.) (*quoting* 137 Cong. Rec. 30821 (1991).

6.      Congress imposed broad prohibitions against "artificial or prerecorded voice" calls in the TCPA, irrespective of the type of technology used in the TCPA. *See, e.g.,* 47 U. S. C. §§227(b)(1)(A) and (B); also *see Facebook, Inc. v. Duguid,* No. 19-511, 2021 U.S. LEXIS 1742, at *18 n.8 (Apr. 1, 2021).

7.      According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

8.      In an effort to enforce the fundamental privacy right provided under the TCPA, Plaintiff and the putative class advance the instant class action complaint.

9.      These telephone calls placed by DRS using an artificial or prerecorded voice, commonly referred to as robocalls, have caused individuals like Mr. Rankin actual harm. This harm arises not only because the recipients of these unconsented calls were subjected to the aggravation that necessarily accompanies unwanted robocalls, but also because called parties often have to pay their cell phone service providers for the receipt of such calls. Moreover, such calls are an invasion of privacy, an intrusion upon seclusion, diminish cellular battery life, and waste data storage capacity.

## JURISDICTION AND VENUE

10.     The Court has federal question jurisdiction over this action pursuant to 28 U.S.C.

§ 1331. *Mims*, 132 S. Ct. at 747. The Court further has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that section apply to this action.

11.     This Court has personal jurisdiction over Defendants because DRS and Celtic Bank both do business in this District. *See*, 28 U.S.C. § 1391(c)(2).

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

13.     Plaintiff, Bruce Rankin, is a natural person and resident of Hamilton County, Ohio. Plaintiff is a "consumer" as defined by the FDCPA.

14.     At all relevant times Plaintiff was the subscriber and sole user of the cellular telephone receiving the robocalls that are the subject of the TCPA claim.

15.     Defendant, DRS, is a Minnesota corporation with its principal place of business in Two Harbors, Minnesota.

16.     DRS is a "debt collector" as defined by the FDCPA.

17.     Defendant, Celtic Bank Corporation, is a Utah corporation with its principal place of business in Salt Lake City, Utah.

18.     Celtic Bank is a "creditor" as defined by the FDPCA, and also as contemplated by *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 2008 FCC LEXIS 56, 43 Comm. Reg. (P & F) 877 (F.C.C. December 28, 2007).

## FACTS

19.     DRS is a debt collector, and at all times relevant herein, was attempting to collect a debt.

20.     Celtic Bank hired DRS to collect a debt related to an Indigo Mastercard on its behalf.

21.     DRS was attempting to collect a debt on behalf of Celtic Bank.

22.     On January 4, 2008, the FCC issued a Declaratory Ruling holding that both a creditor and a third party debt collector may be liable under the TCPA for debt collection calls. ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call….A third party collector may also be liable for a violation of the Commission's rules.")

23.     Accordingly, Celtic is jointly and severally liable for all calls made by DRS on Celtic's behalf.

24.     DRS uses instruments of interstate commerce for its principal purpose of business, which is the collection of debts.

25.     On multiple occasions in 2020 and 2021, DRS called Plaintiff without prior express consent, including, but not limited to:

a.     August 31, 2020, DRS calls Plaintiff's cellular telephone. While the call causes Plaintiffs phone to ring, he does not recognize the telephone number, so Plaintiff does not answer the call.

b.     September 9, 2020, DRS calls Plaintiff's cellular telephone. This call includes a live representative, who asks for Plaintiff's brother, Matthew Rankin. The representative states his name is Mr. Brown, but does not identify himself as a debt collector. Plaintiff advises he is Matthew Rankin's Medical Power of Attorney. Mr. Brown of DRS refuses to continue the call with Plaintiff without the Matthew Rankin present on the call.

c.     September 10, 2020, Plaintiff call Mr. Brown of DRS with his brother, Matthew Rankin, present for the call as well. After multiple attempts, Plaintiff and his brother connected with Mr. Brown. Mr. Brown indicated he was calling to collect a debt on related to a Celtic Bank Indigo Mastercard. Plaintiff and his brother requested DRS

4

send validation of the alleged debt. During the course of this conversation, the call disconnected. Mr. Brown called Plaintiff back and confirmed he would send a debt validation letter to the alleged debt, Matthew Rankin. Then, Plaintiff told DRS not to contact him or Matthew Rankin again.

d.      September 11, 2020, Plaintiff assisted his brother, Matthew Rankin, in drafting and sending a letter to DRS, via certified mail, instructing DRS, *inter alia,* not to contact Plaintiff again. The letter provided in relevant part:

> "I am also prohibiting DRS from contacting Mr. Bruce Rankin at telephone number [ending] 5336. …DRS is also prohibited from communicating with me or anyone affiliated with me regarding this matter by telephone, text, email, fax, or social media."

e.      September 16, 2020, Plaintiff assisted his brother, Matthew Rankin, in drafting and sending another letter to DRS, via certified mail, instructing DRS, *inter alia,* not to contact Plaintiff again, and once again providing the specific number, ending 5336.

f.      September 21, 2020, Plaintiff assisted his brother, Matthew Rankin, in drafting and sending a third letter to DRS, via certified mail, instructing DRS, *inter alia,* not to contact Plaintiff again, and once again providing the specific number, ending 5336.

g.      January 7, 2021, DRS placed a call to Plaintiff. The call included a prerecorded voice message stating it was attempting to collect a debt for Matthew Rankin. At the end of the robocall, the automated message informed Plaintiff to contact Direct Recovery Services at (844)200-4098.

h.      January 15, 2021, Plaintiff received a call from the same number that called on January 7, 2021 (DRS). Plaintiff recognized the number as being the unwanted automated debt collection number and declined to answer the call.

i.      January 21, 2021, DRS placed another robocall to Plaintiff. The call included a prerecorded voice message stating it was attempting to collect a debt for Matthew

Rankin. At the end of the robocall, the automated message informed Plaintiff to contact Direct Recovery Services at (844)200-4098.

j.   April 8, 2021, DRS placed another robocall to Plaintiff. This call was dead air. When Plaintiff called the number back following the call, the representative who answered confirmed it was DRS, and stated they were trying to reach Tamika Rankins. Plaintiff advised he did not know a Tamika Rankins and the DRS agent hung up on him. Plaintiff called DRS again and told the agent he had a cease and desist request, yet continues to receive calls from DRS. The agent verified Plaintiff's number and stated his number would be removed.

26.    The subject robocalls were not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

27.    Plaintiff never provided prior express consent allowing Defendants to place telephone calls to his cellular phone utilizing a "pre-recorded or artificial voice," within the meaning of 47 U.S.C. § 227(b)(1)(A).

28.    Plaintiff specifically and repeatedly told DRS to stop calling him, both verbally during a call with a live representative, and via a written letter. Still, DRS has continued to call him.

## CLASS ALLEGATIONS

29.    Plaintiff brings this case on behalf of Class defined as follows, subject to amendment as appropriate:

**No Consent class**

(1) All persons in the United States (2) who Defendants or some person on Defendants' behalf (3) called on their cell phone using an artificial or prerecorded voice message (4) where the recipient did not give prior express consent to Defendants to receive such calls (5) on or after January 21, 2017.

**"Stop" Calling sub-class**

(1) All persons in the United States (2) who Defendants or some person on Defendants' behalf (3) called on their cell phone using an artificial or prerecorded voice message (4) where the recipient had previously told the Defendant, or the party calling on Defendant's behalf, to "stop" (5) on or after January 17 2021.

30.     Upon information and belief, Defendants called more than 100 members of the putative classes using an automated or prerecorded voice within four years prior to the filing of this action.

31.     Common questions of law or fact exist as to all members of the putative classes, and these common questions predominate over any question solely affecting any individual member, including Plaintiff. Such questions common to the classes include but are not limited to:

a.      Whether Defendants used "artificial or prerecorded voice" calls as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

b.      Whether Defendants had prior express written permission to contact Plaintiff and the other members of the putative classes when they made calls to their cell phones using an artificial or prerecorded voice; and

c.      The amount of damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and the members of the putative classes are entitled to trebled damages.

32.     Plaintiff's claims are typical of the claims of the other members of the putative classes. Also, the factual and legal bases of Defendants' liability to Plaintiff and the other members of the putative classes are the same: Defendants violated the TCPA by causing the cellular telephone number of each member of the putative classes, including Plaintiff, to be called using a prerecorded voice message without prior express written permission.

33.     Plaintiff will fairly and adequately protect the interests of the classes. Plaintiff has no

interests that might conflict with the interests of the classes. Plaintiff is interested in pursuing his claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

34.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are, on information and belief, hundreds of members of the putative classes, such that joinder of all members is impracticable.

35.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

36.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the classes, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the classes as a whole. Prosecution of separate actions by individual members of the putative classes, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the classes that would establish incompatible standards of conduct.

37.     The identity of the classes are, on information and belief, readily identifiable from the records of Defendants.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

38.     Plaintiff restates and incorporates the foregoing allegations as if fully set forth herein.

39.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using . . . an artificial or

prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

40.     Defendants, or their agent(s), made prerecorded calls to the cellular telephones of Plaintiff and the other members of the putative Classes, defined below.

41.     These calls were made without regard to whether or not Defendants had first obtained prior express consent from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the § 227(b) putative Classes when the calls were made.

42.     Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA, by making prerecorded non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Classes without their written prior express permission.

43.     When making the subject calls, Defendants knew that they did not have prior express consent.  Additionally, DRS knew that Plaintiff had instructed DRS to "stop" calling. The violations were therefore willful or knowing.

44.     As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Classes were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

45.     Plaintiff and the putative classes are also entitled to an injunction against future calls.

46.     Because Defendants knew or should have known that Plaintiff and the other members of the putative classes had not given prior express consent to receive prerecorded voice calls to their cellular telephones – and/or willfully made prerecorded voice message to call the cell phones of Plaintiff and the other members of the Class without prior express – the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative classes pursuant to § 227(b)(3) of the TCPA.

47.     Because Defendants knew or should have known that Plaintiff and the other members

of the putative classes had told Defendants to "stop" making prerecorded voice calls to their cellular telephones – yet Defendants disregarded these instructions and kept calling, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative classes pursuant to § 227(b)(3) of the TCPA.

48.     Plaintiff was injured by Defendants' collection robocalls. His privacy was wrongfully invaded, and Plaintiff has suffered aggravation and frustration of having to deal with repeated, unwanted debt collection phone calls forcing him to divert attention away from his work and other activities.

**WHEREFORE**, Plaintiff on behalf of himself and the other members of the classes, prays for the following relief:

a.     A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.     An injunction prohibiting Defendants from using an artificial or prerecorded voice message to call numbers assigned to cellular telephones without the prior express permission of the called party;

c.     An award of actual damages;

d.     An award of statutory damages for Plaintiff and each class member in the amount of $500.00 for each and every call that violated the TCPA;

e.     An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each class member for each and every call that violated the TCPA;

f.     An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate class and any subclass the Court deems appropriate, finding that Plaintiff is a proper representative of the classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the classes; and

g.      Such further and other relief the Court deems reasonable and just.

## COUNT II
### Violations of the FDCPA, 15 U.S.C. § 1692, *et seq.*
### <u>(Individual Claim – Plaintiff Only)</u>

49.     Plaintiff restates and incorporates the foregoing allegations as if fully set forth herein.

50.     This count is for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), by Defendant DRS against Plaintiff, individually.

51.      The telephone calls to Plaintiff were "communications" attempting to collect a "debt" as defined by the FDCPA.

52.     DRS caused Plaintiff's telephone to ring repeatedly, even after multiple instructions that the debt did not belong to Plaintiff and not to call Plaintiff. DRS did so with intent to annoy, abuse, or harass Plaintiff in violation of 15 USCS § 1692d.

53.     DRS used false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer by continuing to call Plaintiff after both Plaintiff, and the alleged debt specifically instructed DRS not to contact Plaintiff again, in violation of 15 USCS § 1692e.

**WHEREFORE**, Plaintiff prays for the following relief:

a.      An award of statutory damages up to $1,000.00 per violation of the FDCPA;

b.      An award of Plaintiff's actual damages;

c.      Plaintiff's reasonable attorney's fees and costs; and

d.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, Bruce Rankin, as to all class and individuals claims alleged herein, hereby demands trial by jury.

Respectfully Submitted,

TARSHISH CODY, PLC

Dated:  July 5, 2021

By:   _s/ Adam R. Strauss_
Adam R. Strauss (#0390942)
ars@attorneysinmn.com
Benjamin W. Tarshish (#0392691)
btarshish@attorneysinmn.com
6337 Penn Avenue South
Minneapolis, MN 55423
Telephone: (952) 361-5556
Facsimile: (952) 361-5559

Amy L. Wells
Ohio Sup. Ct. No. 0078247
IL ARDC No. 6326452
Wells Law Office, Inc.
201 N. Garland Ct., 2908
Chicago, Illinois 60601
Telephone: (773) 762-9104
Email:  amywells@equaljusticelaw.com

James A. Francis
John Soumilas
Lauren KW Brennan
Francis Mailman Soumilas, P.C.
1622 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
Email: jfrancis@consumerlawfirm.com
Email: jsoumilas@consumerlawfirm.com
Email: lbrennan@consumerlawfirm.com

Counsel for Plaintiff, Bruce Rankin