UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRUCE RANKIN,
On behalf of himself and
others similarly situated,

      Plaintiff,

v.

**MEMORANDUM OF LAW REGARDING ORDER DOCKETED AT ECF NO. 81**
Civil File No. 21-01560 (MJD/LIB)

DIRECT RECOVERY SERVICES, LLC,
DNF ASSOCIATES, LLC,

      Defendants.

Adam Strauss, Benjamin William Tarshish, Tarshish Cody, PLC; Amy L. Wells, Wells Law Office, Inc.; James A. Francis, Lauren KW Brennan, Francis Mailman Soumilas, P.C., Counsel for Plaintiff.

Brendan H. Little, Lippes Matias, LLP; Patrick D. Newman, Kiralyn J. Locke, Bassford Remele, Counsel for Defendant DNF Associates, LLC.

No appearance on behalf of Defendant Direct Recovery Services, LLC.

## I. INTRODUCTION

On January 12, 2024, the Court denied DNF Associates' ("DNF") Motion to Vacate Appointment of the Special Master. (Doc. 81.) This memorandum of law memorializes the Court's reasoning for that order.

## II.     RELEVANT FACTS

The early history of this case is well known to the Parties.  The facts relevant to this issue began on October 17, 2022, when the Court appointed Judge James M. Rosenbaum (Retired) as Special Master under Federal Rule of Civil Procedure 53.  (Doc. 59.)  In doing so, the Court stated, "[T]he issues in this action are of a complicated nature, [and found] that it [was] appropriate to appoint a special master for settlement purposes."  (Id. at 2.)  The order provided, "The special master is empowered to call such meetings of the parties as deemed necessary to promote meaningful settlement discussions."  (Id.)  Neither Party objected to the order.

On May 23, 2023, the Court filed an order captioned "Order Adopting Report and Recommendation as Modified and Ordering Parties to Mediation and to Begin Prosecuting this Case."  (Doc. 70.)  In that order, the Court held its default judgment against Defendant DRS in abeyance until resolution of this case on its merits.  (Id. at 13.)  The order also noted that as of that date, the Parties had not contacted the Special Master to schedule a mediation despite being ordered to do so seven months earlier and ordered the Parties to contact Special Master Rosenbaum within one week to schedule a private mediation.  (Id. at 5, 12-13.)  The Parties were also ordered to file a joint Rule 26(f) Report to Magistrate Judge

Brisbois and to schedule a Rule 16 Scheduling Conference.  (Id. at 14.)  In short, the Court stated the obvious: That 22 months after the initial complaint was filed, "it [was] time to move the case forward."  (Id. at 12.)

Despite this, in July, the Court had to ask the Parties about the status of the mediation it had ordered.  The Parties advised the Court that mediation was schedule for October 10, 2023, which was a full year after they were first ordered to mediation.  (Doc. 73.)  Mediation was unsuccessful.

Since the unsuccessful mediation, the Parties have engaged in disputed discovery that has required guidance from Special Master Rosenbaum to ensure the Parties fulfilled commitments in a timely manner, made positions clear to opposing counsel, and negotiated in good faith.  (Docs. 75 at 3-4, 79 at 3-8.)

The Parties were scheduled to meet with Special Master Rosenbaum on December 21, 2023 to discuss outstanding discovery issues.  However, after the Parties' December 20th meet and confer, DNF filed the instant motion to vacate the appointment of Special Master Rosenbaum and the meeting was stayed pending resolution of the motion.  (Doc. 79 at 7-8.)

**III.   DISCUSSION**

Federal Rule of Civil Procedure 53 covers the appointment of special masters and provides, in pertinent part, the following:

3

**(a) Appointment.**
    **(1) Scope.** Unless a statute provides otherwise, a court may appoint a master only to:
        **(A)** perform duties consented to by the parties;
        **(B)** hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by:
            **(i)** some exceptional condition; or
            **(ii)** the need to perform an accounting or resolve a difficult computation of damages; or
        **(C)** address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

. . .

    **(3) Possible Expense or Delay.** In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay.

. . .

**(c) Master's Authority.**
    **(1) In General.** Unless the appointing order directs otherwise, a master may:
        **(A)** regulate all proceedings;
        **(B)** take all appropriate measures to perform the assigned duties fairly and efficiently; and
        **(C)** if conducting an evidentiary hearing, exercise the appointing court's power to compel, take, and record evidence.
    **(2) Sanctions.** The master may by order impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty.

Fed. R. Civ. P. 53.

### A. DNF's Arguments

DNF makes three arguments in support of its motion to vacate the order appointing Special Master Rosenbaum:

1. The appointment limits the scope of Special Master Rosenbaum's authority to facilitating settlement negotiations;

2. If the Court disagrees with that argument, the circumstances still do not warrant appointment of a special master to facilitate discovery; and

3. The Parties should not bear the cost of a special master beyond the scope outlined in the Appointment Order.

(Doc. 75 at 4-9.)

### B. Analysis

DNF reads the Appointment Order too narrowly. DNF argues that because Special Master Rosenbaum was apparently appointed under R. 53(a)(1)(C), he was appointed to conduct one mediation. Specifically, DNF states the following:

> [I]t is clear that the Appointment Order directs Special Master Rosenbaum to address a pretrial matter in facilitating settlement discussions and a required mediation session. This is supported by the Court's indication that it would appoint Special Master Rosenbaum for settlement purposes if the Parties could not resolve the case on their own. . . . Pursuant to the Appointment Order, Special Master Rosenbaum is not authorized to make substantive rulings on discovery disputes between the Parties that would normally be taken under the Court's advisement pursuant to Judge

5

> Davis and/or Magistrate Judge Brisbois' discovery procedures. . . . [N]ow that Special Master Rosenbaum seeks to make substantive rulings in the case, DNF raises this objection in as timely of a manner as possible.

(Id. at 5-6.)

First, the Court did not appoint Special Master Rosenbaum as special master for settlement of "a pretrial matter" or to merely conduct one mediation and nothing in the Court's appointment order can reasonably be construed as such. The Court appointed Special Master Rosenbaum in the hope he could help the Parties settle what had already been a contentious case, although admittedly many of the problems were caused by Defendant DRS's failure to appear. When Special Master Rosenbaum was "empowered to call such meetings of the parties as deemed necessary to promote meaningful settlement discussions," he was given broad powers to do what he deemed necessary to help the Parties settle the case. In this instance, that includes responding to the Parties' requests for assistance in settling discovery disputes. Reasonable settlement negotiations cannot occur if both Parties do not have the same information.

Second, the Court correctly identified the case as one involving complex issues and DNF has since confirmed to Plaintiff's counsel that any putative class could involve hundreds of thousands of accounts. (Doc. 79-2 ¶ 4.) This was one

6

of the reasons that Special Master Rosenbaum was appointed.  As discussed above, Special Master Rosenbaum was given broad powers.  Although DNF cites cases where intransigent Parties led to prolonged discovery disputes or that involved extraordinary, complex, or time-consuming discovery disputes (Doc. 75 at 6-7 (citations omitted)), those cases are not on point because at the time the Court appointed Special Master Rosenbaum, discovery had not begun.  However, it does appear that DNF has failed to fully respond to discovery requests throughout the three-month period outlined in Rankin's briefing.  (Doc. 79 at 3-8.)  This failure to respond to discovery and therefore to be fully prepared for meaningful discussions resulted in Special Master Rosenbaum adjourning early one mediation session and one meeting regarding outstanding discovery issues.  (Id. at 4, 6; Doc. 75 Ex. A.)

Accordingly, the Court finds that Special Master Rosenbaum has taken "all appropriate measures to perform his assigned duties fairly and efficiently." R. 53(c)(1)(B).  In addition, Special Master Rosenbaum has the ability under Rule 53(c)(2) to impose sanctions, if necessary, which further encourages efficiency and fair play.

Third, while the Court understands the Parties' desire to keep litigation costs low, Special Master Rosenbaum has been respectful of the Parties' time and, as discussed above, adjourns mediation and other meetings early when it is apparent that Parties are not prepared and/or that the sessions will not be productive. Accordingly, the Court does not find this argument persuasive.

## IV. CONCLUSION

It is the Court's hope that the Parties will use the tremendous resource they have in Special Master Rosenbaum to assist them to work toward resolution of this matter or, if not resolution, at least to narrow the issues for trial in this complicated case.

Dated: January 22, 2024　　　　　　　　　s/Michael J. Davis
　　　　　　　　　　　　　　　　　　　　　Michael J. Davis
　　　　　　　　　　　　　　　　　　　　　United States District Court